UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

JESSICA SYKES-ABRAMS,

                Plaintiff,

v.                                                      Case No. 6:14-CV-1085 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                Defendant.
─────────────────────────────────────────────

APPEARANCES:                                      OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ          PETER W. ANTONOWICZ, ESQ.
 Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.              JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this Social Security action filed by Jessica Sykes-Abrams ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13-14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on February 22, 1980. She completed the 12th grade of high school. Plaintiff has worked as a customer service representative, customer service/receptionist, and cashier. (T. 30.) Generally, Plaintiff's alleged disability consists of lumbar spine injuries, scoliosis, hydromyelia, syringomyelia, asthma, generalized anxiety disorder, and depression. Plaintiff's alleged disability onset date is May 15, 2007, and her date last insured is December 31, 2009.

### B. Procedural History

On May 22, 2007, Plaintiff applied for Social Security Disability Insurance Benefits and Supplemental Security Income. Plaintiff's applications were denied on July 19, 2007, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On December 15, 2009, a Notice of Hearing was mailed to Plaintiff at her last known address. Plaintiff did not return the Notice of Hearing form, and subsequently failed to appear at the hearing. On January 26, 2010, a Notice to Show Cause for Failure to Appear was mailed to Plaintiff, but Plaintiff did not respond. On December 15, 2010, the claim was dismissed on the grounds of abandonment. (T. 109-113.)

On January 11, 2012, Plaintiff once again applied for Social Security Disability Insurance Benefits and Supplemental Security Income. Plaintiff's applications were once again denied, after which she timely requested a hearing before an ALJ. On April 10, 2013, Plaintiff appeared in a video hearing before the ALJ, James G. Myles. (T. 75-108.) On May 2, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-36.) On August 15, 2014, the Appeals Council denied Plaintiff's request for review, rendering the

ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 17-36.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2009, and had not engaged in substantial gainful activity since May 15, 2007, her alleged onset date. (T. 23.) Second, the ALJ found that Plaintiff's degenerative disc disease, scoliosis, lumbago, syringomyelia, hydromyelia, asthma, depression, anxiety, and substance abuse addiction (in remission) are severe impairments, but that Plaintiff's migraine headaches and allergic rhinitis are not severe impairments. (*Id.*) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 23-25.) The ALJ considered Listings 1.02, 1.04, 3.03, 12.04, 12.06, and 12.09. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.927(a) with the following additional limitations:

> The claimant should have the option to stretch at the workstation after sitting for 30 minutes. The claimant can occasionally crouch, balance, stoop, climb, kneel and crawl but should avoid ladders, ropes and scaffolds. The claimant can occasionally bend to the floor. Further, the claimant should not perform any frequent, repetitive, rapid head movements. The claimant should avoid concentrated exposure to pulmonary irritants, temperature extremes, loud noises, and bright lights. Although the claimant can have occasional interpersonal contact in the workplace, she should not work as part of a team. Extensive contact with the public should not be a critical function of the claimant's job responsibilities. The claimant is limited to routine, unskilled work.

(T. 25.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work as a

3

customer service representative, customer service/receptionist, or cashier. (T. 30.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 31-32.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility. (Dkt. No. 13, at 16-20 [Pl.'s Mem. of Law].) Second, and finally, Plaintiff argues that the ALJ erred in assessing the medical evidence of record. (*Id.* at 20-24.)

Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (Dkt. No. 14, at 6-10 [Def.'s Mem. of Law].) Second, and finally, Defendant argues that the ALJ properly evaluated the opinion evidence in the record. (*Id.* at 10-21.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord, *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## III. ANALYSIS

### A. Whether the ALJ Erred in Evaluating Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 6-10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15

2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of her symptoms are not fully credible. (T. 28.) The ALJ noted that, at the hearing, "the claimant was observed to enter the room, move freely, and change positions without any apparent distress." (*Id.*) The ALJ further noted, "Although the

7

claimant's testimony indicates a lower level of functioning, the testimony was inconsistent with the claimant's function report, statements made during a consultative examination and treatment records." (T. 28.) The ALJ determined that Plaintiff's subjective complaints are not supported by the evidence of record, including Plaintiff's medical treatment record, physical activities, and poor work history. (*Id.*)

First, the ALJ found that Plaintiff's treatment record fails to support Plaintiff's allegation of total disability. (*Id.*) The ALJ cited evidence suggesting that Plaintiff had exaggerated her symptoms. (T. 28.) For example, the ALJ noted that, on January 23, 2013, treating physician Nabin Adhikari, M.D., observed that Plaintiff rated her pain as a ten out of ten, yet appeared to be in no acute distress. (*Id.*) In considering the treatment Plaintiff received to relieve her symptoms, the ALJ noted that Plaintiff was discharged from physical therapy for lack of attendance after two sessions, never attempted to use a Transcutaneous Electrical Nerve Simulation ("TENS") unit for pain management as her physician advised, and had a four year gap in her mental health treatment. (T. 26-29.) Additionally the ALJ noted that, although Plaintiff reported an increase in frequency and severity of panic attacks, she did not take any medication for anxiety as of February 29, 2012. (T. 27.)

Second, the ALJ found that Plaintiff's allegation of total disability is inconsistent with her activities of daily living including self-care, cleaning, cooking, shopping, watching television, reading, going to church, and doing laundry. (T. 28.) Finally, the ALJ noted that Plaintiff had a poor work history, sold drugs after the date last insured, and attempted to seek employment during the time period under consideration. (T. 28.) The ALJ reasoned that Plaintiff's attempt to seek employment suggests that her symptoms are "not that limiting." (*Id.*)

For these reasons, the ALJ appropriately evaluated Plaintiff's credibility, and remand is not necessary on this basis.

## B. Whether the ALJ Erred in Evaluating the Medical Evidence of Record

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 10-21 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ must consider every medical opinion of record. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given to the opinion of a treating physician, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) the frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. §§ 404.927(c), 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require an ALJ to set forth his or her reasons for the weight assigned to a treating physician's opinion. *Shaw*, 221 F.3d at 134.

When controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006); *see also Stytzer v. Astrue*, 07-CV-0811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law

judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency]."); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (finding that, because the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

### 1. Treating Physicians, Dr. Jorgensen and Dr. Adhikari

On June 2, 2012, treating physicians, Dr. William Jorgensen, D.O., and Dr. Nabin Adhikari, M.D., rendered a joint opinion of Plaintiff's functional limitations.[1] Dr. Jorgensen and Dr. Adhikari opined that Plaintiff could sit for two hours or less, stand/walk for one hour or less, occasionally lift and carry ten pounds or less, and frequently lift and carry five pounds or less during an eight-hour workday. (T. 467.) Dr. Jorgensen and Dr. Adhikari opined that Plaintiff could occasionally climb and balance, but could never kneel, crouch, crawl, or stoop. (*Id.*) Dr. Jorgensen and Dr. Adhikari opined that Plaintiff would need to lay down or recline intermittently throughout the workday at an unpredictable frequency, and that Plaintiff had mild limitations in reaching, handling, and fingering. (*Id.*) Dr. Jorgensen and Dr. Adhikari opined that Plaintiff's symptoms would cause her to be off-task at least 50 percent of an eight-hour workday, and that Plaintiff would likely be absent more than four workdays per month. (T. 469.)

The ALJ afforded some weight to Dr. Jorgensen and Dr. Adhikari's joint opinion, reasoning that it is inconsistent with the record as a whole. (T. 29.) Specifically, the ALJ

---

[1] The ALJ referred to this opinion as Dr. Jorgensen's opinion, however the Court notes that the opinion is signed by both Dr. Jorgensen and Dr. Adhikari. (T. 468.)

reasoned that Dr. Jorgensen and Dr. Adhikari's conclusions that Plaintiff could not perform sedentary work and would likely be absent more than four workdays per month are unsupported by the record as a whole, including medical evidence and Plaintiff's reported physical activities. (T. 29.)

The ALJ cited examination notes and clinical findings from treating and examining sources, including Dr. Adhikari, that are inconsistent with Dr. Jorgensen and Dr. Adhikari's opinion. (T. 26-28.) For example, the ALJ noted that, on January 23, 2013, Dr. Adhikari observed that Plaintiff rated her pain as a ten out of ten, yet appeared to be in no acute distress. (T. 28.) The ALJ noted that, on February 8, 2012, examining neurologist Ahmed Shatla, M.D., observed that a nerve conduction study of Plaintiff's extremities was within normal limits and revealed no evidence of radiculopathy, polyneuropathy, plexopathy, myopathy, or entrapment neuropathy. (T. 26.) The ALJ noted that, on April 18, 2012, consultative examiner, John Fkiaras, M.D., observed that Plaintiff displayed a slightly antalgic gait but walked on her heels and toes without difficulty, was able to rise from a chair without difficulty, and performed two thirds of a squat. (T. 27.) The ALJ noted that Dr. Fkiaras observed that Plaintiff had decreased ranges of motion in the cervical and lumbar spine, but had full ranges of motion of the bilateral elbows, forearms, wrists, hips, knees, and ankles. (*Id.*) The ALJ further noted that Dr. Fkiaras observed that Plaintiff's grip strength was five out of five, her muscle strength in the upper extremities was five out of five, and her muscle strength in the lower extremities was four out of five. (T. 27.)

Additionally, the Court notes that Dr. Fkiaras observed that Plaintiff appeared to be in no acute distress, had normal stance, used no assistive devices, and needed no help changing for the exam or getting on and off the exam table. (T. 375.) Further, Dr. Fkiaras did not opine that

11

Plaintiff had any limitations in her ability to sit. (T. 377.) Plaintiff argues that Dr. Jorgensen and Dr. Adhikari's treated Plaintiff for several years. (Dkt. No. 13, at 5-7 [Def.'s Mem. of Law].) However, the Court notes that, at the time their opinion was rendered, Dr. Jorgensen and Dr. Adhikari stated they had treated Plaintiff for the nine-month period from October 20, 2011, through August 7, 2012. (T. 468.)

Where, as here, an ALJ's reasoning and adherence to the Regulations are clear, the ALJ is not required to review explicitly each and every factor of the Regulation. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Therefore, the ALJ's decision to assign some weight to the joint opinion of Dr. Jorgensen and Dr. Adhikari is supported by substantial evidence.

### 2. State Agency Consultative Examiners, Dr. Fkiaras and Dr. Hansen, and State Agency Psychologist, Dr. Andrews

On April 18, 2012, consultative examiner, Dr. John Fkiaras, M.D., assessed Plaintiff with low back pain, a history of scoliosis, hydromyelia, syringomyelia, cervical neck pain, and asthma. (T. 377.) Dr. Fkiaras opined that Plaintiff had marked restrictions in walking, bending, climbing stairs, and standing, and that Plaintiff had mild limitations in turning her head. (*Id.*) Dr. Fkiaras further opined that Plaintiff could not perform activities requiring moderate or greater exertion and should avoid smoke, dust, and respiratory irritants. (*Id.*)

On April 18, 2012, consultative examining psychologist, Dr. Rachelle Hansen, Psy. D., diagnosed Plaintiff with generalized anxiety disorder and depressive disorder, NOS. (T. 372.)

Dr. Hansen opined that Plaintiff could learn new tasks, follow and understand simple directions and instructions, and independently perform simple tasks that did not involve motor control. (T. 372.) Dr. Hansen opined that Plaintiff could maintain attention and concentration, and maintain a regular schedule, dependant on her pain level. (T. 372.) Dr. Hansen opined that Plaintiff would have difficulty making appropriate decisions, performing complex tasks independently, and dealing appropriately with stress. (T. 27.) Dr. Hansen indicated that Plaintiff's limitations appear to be caused by Plaintiff's physical condition, pain, and psychiatric condition. (T. 27.)

The record also contains assessments of Plaintiff's mental capabilities and limitations from State agency psychologist, Dr. T. Andrews. (T. 378-92.) On April 26, 2012, Dr. Andrews completed a mental RFC assessment and psychiatric review technique based on Plaintiff's medical records. (*Id.*) Dr. Andrews assessed Plaintiff with an affective disorder, anxiety-related disorder, and substance addiction disorder. (T. 378.) Dr. Andrews opined that Plaintiff had moderate limitations in the abilities to carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (T. 392-93.) Dr. Andrews further opined that Plaintiff had mild limitations performing activities of daily living and maintaining concentration, persistence, and pace, and that Plaintiff had moderate limitations maintaining social functioning.

The ALJ stated that he afforded significant weight to the "[S]tate agency assessments" in determining Plaintiff's RFC. (T. 28.) Plaintiff argues that the ALJ attributed significant weight to the opinions of the non-treating and non-examining State agency sources only, and failed to weigh the opinions of consultative physical examiner Dr. Fkiaras and consultative mental examiner Dr. Hansen. (Dkt. No. 13, at 21 [Pl.'s Mem. of Law].) However, it is apparent from

13

the ALJ's thorough summaries of Dr. Fkiras and Dr. Hansen's examination notes and opinions that the ALJ considered their opinions in determining Plaintiff's RFC. (T. 27-28.) Further, the ALJ's RFC is consistent with the opinions of Dr. Fkiras and Dr. Hansen. (T. 25, 372, 377.)

Plaintiff argues that the ALJ erred in assigning significant weight to the opinion of the "non-examining" Dr. T. Andrews. (Dkt. No. 13, at 21 [Pl.'s Mem. of Law].) However, the ALJ accurately summarized the opinion provided by Dr. Andrews and reasoned that it was entitled to significant weight because Dr. Andrews reviewed the medical evidence and his opinion is consistent with the evidence as a whole. (T. 29.)

An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")

Accordingly, the ALJ did not err in assessing the opinions of Dr. Fkiras, Dr. Hansen, and Dr. Andrews.

### 3. State Agency Single Decision Maker, C. Kloepfer

Plaintiff argues that the ALJ "relied solely upon the [S]tate agency consultant of unknown credentials" for his findings regarding Plaintiff's physical limitations. (Dkt. No. 13, at 21 [Pl.'s Mem. of Law].) However, as discussed above in Part III.B.1. and Part III.B.2. of this Decision and Order, the ALJ afforded some weight to the joint opinion of Dr. Jorgensen and Dr. Adhikari, and afforded significant weight to the opinion of Dr. Fkiaras in determining the

physical portion of Plaintiff's RFC. (T. 27-28.) By contrast, the ALJ did not reference the opinion of State agency single decision maker, C. Kloepfer ("SDM Kloepfer"), anywhere in the decision. (T. 17-36.) Further, the ALJ's RFC determination included greater physical limitations than indicated by SDM Kloepfer, who opined that Plaintiff could perform light work with postural limitations. (T. 25, 410-415.) Accordingly, the ALJ did not commit error with regard to the opinion of SDM Kloepfer.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 19, 2015
Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge